Coxe, District Judge.
The complainants are packers of salmon at Astoria, Oregon. The defendants are wholesale grocers in the city of New York. The controversy relates to the use of the word “Epicure” as a trade-mark for canned salmon. After a careful investigation, which discovered no instance of similar use, the complainants, on the 4th of August, 1885, registered the trade-mark in the patent office. The application was filed July 7, 1885, and stated that the otrade-mark had been used in their business since June 20, 1885. For a few years prior to the latter date the defendants, at intervals and to a limited extent, had used the word as a trade-mark for canned tomatoes and canned peaches. The complainants were, therefore, the first to use the word “Epicure” as a trade-mark for canned salmon. The defendants were the first to use it as a trade-mark for canned tomatoes and canned peaches. The simple question, then, is whether the defendants’ use of the word as applied to tomatoes and peaches prevented the complainants from selecting it as a trade-mark for salmon. The complainants had built up an extensive business in canned salmon under this name before the defendants asserted their right to apply it to all canned goods sold by them, salmon included. It is stated that the complainants have sold about 8,500,000 packages of “Epicure” salmon. Their business is large and flourishing. It is devoted exclusively to salmon packing. In the summer of 1891 the defendants sold one dozen cans of salmon bearing this brand. It is asserted that this was done for the purpose of testing the question now presented.
The rights of the parties must be ascertained and measured by the situation as it existed in 1885 when complainants entered the field. Had they the right at that time to use the word “Epicure?” If the defendants had then sought to restrain the complainants’ use of the word they would, in all probability, have been promptly dismissed from court with the information that their business as dealers in fruit could not be injured by the use of the term “Epicure” in salmon packing. No one who has not permanently parted with his wits could purchase a can of salmon supposing he was getting a can of tomatoes. “Epicure” when *831 used, in 1885, by the defendants meant fruit; when used by the complainants it meant salmon. If the complainants’ use of the word could not have been enjoined in 1885 their right to it should not be destroyed now. If lawful then it should be protected now. The word was free to the complainants. They were engaged in a distinct line of industry. Its use could not possibly have harmed the defendants.
The complainants, unmolested by the defendants or any one else, and molesting no one themselves, have labored during seven years to establish a valuable industry distinctively their own and distinguished the country over by their trade-mark. The word “Epicure” is inseparable from and commensurate with their business. It is the brand which designates the best salmon packed by them. It is their seal of genuineness, their guaranty to purchasers that the goods so labeled are of a superior quality. The advantages of higher prices and larger demand exist because of the established excellence of the goods. These are advantages which belong to the complainants. Whatever value “Epicure” has as a brand for salmon was imparted, to it by them. To transfer the good will thus secured by years of arduous and conscientious endeavor to the defendants, or to throw it open as a poaching ground for the general public, would be doing the complainants gross injustice.
It is not pretended that the complainants knew of the defendants’ use of the word “Epicure” prior to 1885, but even if they had known it, it is not easy to see how complainants’ use of the word violated any principle of business morality. Salmon and tomatoes are both articles of food it is true, but in other respects they differ as a hat differs from a boot,—though both are articles of wearing apparel. A hat dealer having built up a flourishing trade in “Sheridan” hats could not be compelled to relinquish it at the instance of a shoemaker who, before that, had sold “Sheridan” boots. An oyster packer on the Chesapeake who has established a valuable market for “ Columbia ” oysters ought not to be despoiled of his profits because an orange grower in California had previously sold “Columbia” oranges. A manufacturer who should call his bicycles “Deerfoot,” would hardly interfere with “Deerfoot” sausages or “Deerfoot” butter.
There is little similarity between a salmon and a tomato. In a commercial sense the want of resemblance is marked. The business of a fruit packer does not include salmon; the business of a salmon packer does not include tomatoes and peaches. Salmon is not a species of the genus “fruit” or of the genus “vegetables.” The contention that the use of the trade-mark on canned fruit in 1885 pre-empted its use for all time in connection with canned goods of every variety, in defiance of the rights of intervening users, cannot be maintained. Such a contention would prohibit its use on salmon not only but on milk, lard, petroleum and even gunpowder.' In 1890 the defendants commenced using the term “Epicure” as a brand for cigars, but it is clear that they could not have done so if a cigarmaker had so used it continuously since 1885.
The reasoning of some of the authorities would indicate that the defendants had a right to use the brand in connection with other fruit and *832 vegetables, analogous to tomatoes and peaches, but to assert that they have the right to use it on all canned goods is carrying the doctrine fan beyond any reported case. Beer and nails do not belong to the same class of merchandise because both are sold in kegs. The fact that the defendants have subsequently extended their business so as to include fish and other like articles of food does not avail them, neither would the fact if it existed, that, at the time they adopted the word “Epicure” they intended in the future to embrace these articles. One may conceive a valuable idea, which, if properly carried out and developed, entitles him to a patent and to enjoy the rewards of an inventor, but. if the idea continues to remain an idea and some one else first embodies it, the idealogue will presently discover that he has furnished another illustration of the superior value of facts over theories as commercial commodities. So with a trade-mark. It is the party who uses it first as a brand for his goods, and builds up a business under it, who is entitled to protection, and not the one who first thought of using it on similar goods, but did not use it. The law deals with acts not intentions.
The equities are with the complainants. Their large and flourishing business will be destroyed or jeoparded if the defendants and others are-permitted to share the good will which has been established for the-“Epicure” brand of salmon. No corresponding injury can befall the defendants if they desist in the future as in the past from using the word “Epicure” as applied to salmon. If the defendants’ statement of the amount of their sales is correct-, there can be no occasion for the services of a master. It follows that the complainants are entitled to a decree for an injunction, with costs.