WILLIAM WALTKE & CO. v. GEO. H. SCHAFER & CO.

(Court of Appeals of District of Columbia. Submitted January 16, 1920.
Decided March 1, 1920.)

No. 1284.

1. TRADE-MARKS AND TRADE-NAMES ⊚⊐3(4)—"LAVA," AS APPLIED TO SOAP, NOT DESCRIPTIVE; "LAVARE."
    The word "lava," which comes from "lavare," to wash, and means, in English, fluid rock, is not descriptive as applied to soap, though it suggests the function of soap.

2. TRADE-MARKS AND TRADE-NAMES ⊚⊐31—OWNER'S RIGHT OF EXCLUSIVE USE ON OTHER GOODS OF SAME GENERAL CLASS.
    The owner of a trade-mark has the right, not only to its exclusive use on goods which he has manufactured, but also on goods which he may afterwards produce, if they belong to the same general class as those upon which he has been using the mark.

3. TRADE-MARKS AND TRADE-NAMES ⊚⊐43—TRADE-MARK USED ON SOAP CANNOT BE USED BY ANOTHER ON SHAVING CREAM.
    An owner of a trade-mark used in connection with toilet soap may prevent its use by others on shaving soap or shaving cream.

4. TRADE-MARKS AND TRADE-NAMES ⊚⊐43—"LAVA" IS INFRINGED BY "U-LAVO."
    The trade-mark "Lava" is infringed by the use of the word "U-Lavo," as the words "lava" and "lavo" have substantially the same meaning, and the prefix "U" is not sufficient to prevent confusing the two marks.

5. TRADE-MARKS AND TRADE-NAMES ⊚⊐43—TEST OF INFRINGEMENT; EXACT MEANING OF WORDS OR LIABILITY TO MISLEAD PUBLIC.
    The test of whether one trade-mark infringes another is not the exact meaning of the words, but whether they are so similar in appearance and sound as to lead the public to believe that the goods on which they appear had a common origin.

6. TRADE-MARKS AND TRADE-NAMES ⊚⊐44—PERSON OPPOSING REGISTRATION OF CONFLICTING MARK NEED NOT SHOW DAMAGES.
    Under 33 Stat. 725, § 5 (Comp. St. § 9490), providing for the denial of registration to trade-marks which so nearly resemble a registered or known trade-mark of another as to be likely to cause confusion or mistake, or deceive purchasers, one opposing the registration of a mark similar to his registered trade-mark need not establish damages.

7. TRADE-MARKS AND TRADE-NAMES ⊚⊐44—DOUBT AS TO RIGHT OF REGISTRATION RESOLVED AGAINST APPELLANT.
    When there is a doubt as to whether a trade-mark sought to be registered is so similar to another trade-mark as to cause confusion or mistake, the doubt must be resolved against the newcomer.

Appeal from a Decision of an Assistant Commissioner of Patents.

Application by George H. Schafer & Co., for registration of a trademark, opposed by William Waltke & Co. From a decision granting registration, the opposing party appeals. Reversed, and opposition sustained.

J. S. Barker, of Washington, D. C., and E. E. Longan, of St. Louis, Mo., for appellant.

Geo. H. Schafer, of Fort Madison, Iowa, in pro. per.

E. T. Brandenburg, of Washington, D. C. (Franklin H. Hough, of Washington, D. C., on the brief), for appellee.

⊚⊐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

SMYTH, Chief Justice. Geo. H. Schafer & Co., a partnership, applied for registration of "U-Lavo" as a trade-mark on shaving cream. Registration was opposed by William Waltke & Co., a corporation, on the ground that "U-Lavo" was so similar to the mark "Lava," in use by it on toilet soap, that it was not registerable. The Patent Office overruled the opposition and registered the mark.

William Waltke in 1858 established a soap-manufacturing business, which was continued by him and others until acquired by the opposer, who now owns it. In 1893 Wm. Waltke & Co., a partnership, the immediate predecessor of the opposer corporation, adopted, and began the use of, the word "Lava" as a trade-mark on its soap. Later its business was transferred to the corporation, and with it the right to the use of the mark. Upwards of a half million dollars have been spent by the opposer and its predecessor in advertising goods under the mark "Lava," and the corporation's plant has come to be known as "The Home of Lava Soap." Applicant did not adopt its mark until 1913.

[1] At the outset it is urged by the applicant that the opposer's mark is descriptive, and hence not entitled to registration. The word "lava," according to Webster's Dictionary, comes from "lavare," to wash, and means, in English, fluid rock. It may suggest the function of soap, but it does not describe its properties. In re Stephens-Adamson Manufacturing Co., 49 App. D. C. ——, 262 Fed. 635, and the cases therein cited. Much stress is laid upon Standard Paint Co. v. Trinidad Asphalt Manufacturing Co., 220 U. S. 446, 31 Sup. Ct. 456, 55 L. Ed. 536, by the applicant with respect to this point, but it is easily distinguished from the case before us. In that case the word "rubberoid" was used on goods which contained no rubber, but was in the "nature of soft, flexible rubber." It is a compound of the word "rubber" and the suffix "oid." "Oid" is defined by the lexicographers as meaning the form or resemblance of the thing indicated; "like," as in "anthropoid," like man. The mark "Rubberoid," as applied to the goods in question, meant that they were like rubber, which was true, and was therefore descriptive.

[2, 3] The owner of a trade-mark has the right, not only to its exclusive use on goods which he has manufactured, but also on goods which he may afterwards produce, if they belong to the same general class as those upon which he has been using the mark. Gutta-Percha & Rubber Manufacturing Co. v. Ajax Manufacturing Co., 48 App. D. C. 233; Walter Baker Co. v. Harrison, 32 App. D. C. 272. No person may legally interfere with the use of the mark by him in the natural expansion of his business. Simplex Heating Co. v. Gold Car H. & L. Co., 43 App. D. C. 28. When chemically analyzed, shaving cream and toilet soap may not be identical in all their elements; but in the popular mind a shaving cream is a soap, and the manufacture of it by opposer would be a natural step in the broadening out of its business as a soap producer. In fact it has already taken that step, for it is now manufacturing shaving soap and shaving cream, although it does not put them out as its own products. They are produced to be distributed by others. Toilet soap and shaving soap or cream are related

materials, and since opposer has a right to use its trade-mark on toilet soap it may prevent the use of it by others on shaving soap or shaving cream.

[4, 5] But it is contended that applicant is not attempting to use opposer's mark, or one similar to it, and consequently that the rule we have been discussing does not apply. The Assistant Commissioner held that there was a wide difference between the meaning of the two marks. The word "lava," he said, suggests grit, while the word "lavo" (a part of applicant's mark) refers to washing. Counsel for applicant assert that the word "lavo" is Latin, and means "wash or lave." The Latin word "lavare," the root of "lava," is very closely allied in meaning to the word "lavo"—so much so that the two words may be treated as meaning substantially the same thing. However, the test is not the exact meaning of the words, but whether they are so similar in appearance and sound as to lead the public to believe that the goods on which they appear had a common origin.

Undoubtedly, as urged, the prefix "U-" distinguishes the one mark from the other; but we think it is only an arguable distinction, and that it is not sufficient. Thomas Manufacturing Co. v. Æolian Co., 47 App. D. C. 379. "Lavo" is the dominant feature in applicant's mark, and the one most likely to be remembered. Of course, if the intending purchaser could see both marks together, he would readily note the difference between them; but if, upon seeing only one, he must rely upon his memory of the other, he would not be likely to apprehend the distinction. He acts quickly and upon impression. He is governed by a casual glance. Patton Paint Co. v. Orr's Zinc White, Ltd., 48 App. D. C. 221, 222. Under such circumstances he ·would be apt to mistake the one for the other, and thus would occur the confusion against which the statute is leveled.

[6] Opposer is not bound to establish damages in order that it may succeed. It is sufficient for it to show that the applicant's mark would be "likely to cause confusion or mistake in the mind of the public. *  *  *" Section 5, 33 Stat. 725 (Comp. St. § 9490); Patton Paint Co. v. Orr's Zinc White, Ltd., 48 App. D. C. 223; Thomas Manufacturing Co. v. Æolian Co., 47 App. D. C. 378.

[7] The case is not free from difficulty, but where there is doubt the courts resolve it against the newcomer. Lambert Pharmacal Co. v. Mentho-Listine Chemical Co., 47 App. D. C. 197. The reason for this is, as has been said by this court more than once, that the field from which a person may select a trade-mark is practically unlimited, and hence there is no excuse for his impinging upon, or even closely approaching, the mark of his business rival. O. & W. Thum Co. v. Dickinson, 46 App. D. C. 306; Florence Manufacturing Co. v. J. C. Dowd & Co., 178 Fed. 75, 101 C. C. A. 565. Where he does so he is open to the suspicion that his purpose is to appropriate to himself some of the good will of his competitor.

From what we have said, it follows that the decision of the Patent Office is reversed, and the opposition of William Waltke & Co., Incorporated, sustained.

Reversed.