In re JEFFRIES.

(District Court, E. D. Texas, Tyler Division. July 5, 1926.)

No. 2546.

1. Bankruptcy ⊛➡143(11)—Consignment contract, covering stock of goods and fixtures, and requiring insurance for benefit of consignor, held sustainable as against trustee in bankruptcy of consignee.

Agreement for delivery of stock of goods and fixtures, under consignment contract requiring consignee to insure for benefit of consignor, held sustainable as against claim of trustee in bankruptcy of consignee to proceeds of insurance, though policies contained no loss payable clause in favor of consignor.

2. Insurance ⊛➡208—Oral assignment of policy is enforceable.

An oral assignment of an insurance policy is valid and enforceable.

3. Bankruptcy ⊛➡143(11)—Blanket agreement to consider goods delivered as delivered on consignment, and to insure for benefit of consignor, held not sustainable against trustee in bankruptcy of consignee.

Bankrupt agreement that future deliveries of goods shall be considered as delivered on consignment, and that consignee shall insure for benefit of consignor, held not sustainable against claim of trustee in bankruptcy of consignee to proceeds of insurance, grossly inadequate to pay claims against consignee, there being no loss payable clause in policies in favor of consignor.

In Bankruptcy. In the matter of the bankruptcy of Earl Jeffries. On petition for review of judgment of referee affecting right to proceeds of insurance. Judgment approved in accordance with opinion.

Lasseter & Simpson, of Tyler, Tex., for appellant.

Bulloch & Ramey, of Tyler, Tex., for appellee.

ESTES, District Judge. This case comes before the court in the form of a petition for review, and the question is presented whether the evidence of the witnesses and the records in the case sustain the findings of fact and conclusions of law of the referee. The findings of fact are attacked in 22 separate objections. I do not think it is necessary to review them in detail, for I think the final disposition made of the case by the referee is correct.

It seems clear that the Mayfield Company, on March 16, 1922, delivered a stock of goods and fixtures to the bankrupt herein, under the provisions of a consignment contract that, under the decisions of the courts of this state, is a valid transaction. The instrument provided in detail the method of conducting the business, making reports of sales, and disposing of the proceeds of same, and also contemplated that insurance in favor of the Mayfield Company to the extent of its interest should be carried on the goods in question.

On February 9, 1923, another instrument, designed to be in the nature of additional security to the Mayfield Company, was executed by the bankrupt, in which an indebtedness amounting to something more than $8,000 was acknowledged, and an agreement made with respect to goods that might be purchased in the future. The obvious purpose was to have an understanding that such goods would be delivered on consignment or conditional sales.

Goods were purchased from other houses from time to time, and the entire stock thus accumulated, aggregating in value from $20,000 to $22,000, was destroyed by fire on February 16, 1925. At that time insurance on the goods in the amount of about $14,000 had been procured, and debts aggregating approximately $17,500, due to about 75 other creditors, had been contracted.

A controversy arose respecting the valid-

ity of the insurance, with the result that a settlement was made, by the terms of which $8,500 was paid to the trustee, and constitutes all the assets of the estate. The Mayfield Company is claiming a lien upon all of this, by virtue of its consignment contracts and agreement that the bankrupt would maintain insurance for Mayfield's benefit. The referee decided that that concern should have $2,145 of the insurance, same being the amount collected on the fixtures, but should be charged with its proportion of the cost of the bankruptcy proceedings. He held that company's claim to the proceeds of the insurance that was collected from the loss of the goods to be without merit.

[1, 2] I think that the original consignment contract can be enforced. The fact that the insurance policies did not recite the interest of the Mayfield Company in the goods, or contain a clause making the policy payable to that concern as its interest might appear, would not affect the Mayfield Company's rights, because the testimony seems to be uncontroverted that an oral assignment of the policies was made, and such an arrangement is held by the courts to be enforceable.

[3] I do not think the subsequent transaction—that is, the blanket agreement that goods to be delivered in the future should be considered to be delivered on consignment—can be upheld. Conditional sales that are beyond the provisions of the statute making invalid mortgages of that character must, it seems to me, have reference to specific goods delivered at a specific time. This would limit the interest of the Mayfield Company in these policies to such goods from the original stock as were shown by the evidence to have been destroyed in the fire. I do not understand that the evidence shows distinctly that any of the original stock was destroyed. There is some testimony that certain shoes and shirts, and perhaps other articles, were in the stock when it was destroyed; but their value is not shown, and the proof identifying the goods remaining from the original purchase was so indefinite as to make it improper to render a judgment for the value of them.

I think the right of the Mayfield Company to the insurance collected from the fixtures is clear, and also that the amount found by the referee to have been collected for their loss is correct.

So, with this explanation, the judgment of the referee is approved; and it is so ordered.