## DI SANTO v. GUARNERI.

(Court of Appeals of District of Columbia. Submitted January 18, 1927. Decided February 7, 1927.)

No. 1909.

1. **Trade-marks and trade-names and unfair competition ⬥43—Opposer's intended use of trade-mark cannot avail him in trade-mark oposition proceeding.**

Rights of opposer in trade-mark opposition proceeding must be determined from his actual use of mark involved, and not his intended use.

2. **Trade-marks and trade-names and unfair competition ⬥43—Olive oil held possessed of same descriptive properties as tomato paste, affecting right to registration of trade-mark (Act Feb. 20, 1905, c. 592, as amended [Comp. St. § 9485 et seq.]).**

Olive oil *held* possessed of same descriptive properties as tomato paste, as affecting right to registration of trade-mark under Act Feb. 20, 1905, c. 592, as amended (Comp. St. § 9485 et seq.).

3. **Trade-marks and trade-names and unfair competition ⬥44—Doubt whether confusion will result should be resolved against newcomer in field, in trade-mark opposition proceeding.**

In trade-mark opposition proceeding, where there is doubt whether confusion will arise from use of trade-mark, court should resolve doubt against newcomer in field.

Robb, Associate Justice, dissenting.

Appeal from Commissioner of Patents.

Application for trade-mark by Dominico Guarneri, opposed by Joseph Di Santo. From a decision of the Commissioner of Patents, dismissing opposition, opposer appeals. Reversed, and opposition sustained.

A. E. Dowell, of Washington, D. C., for appellant.

Hubert Howson and H. A. Howson, both of New York City, for appellee.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and GRAHAM, Presiding Judge of the United States Court of Customs Appeals.

GRAHAM, Acting Associate Justice. On June 19, 1924, the appellee, Dominico Guarneri, filed in the Patent Office an application for registration of a trade-mark to be used in connection with the sale of olive oil, under the Act of February 20, 1905 (33 Stat. 724), as amended (Comp. St. § 9485 et seq.). The mark described consisted of a bust-size likeness of the Italian patriot Giuseppe Mazzini, surrounded by a border consisting of two concentric circles, with the word "Mazzini" in heavy black-faced type at the bot-

tom of the likeness. On September 18, 1924, the appellant, Joseph Di Santo, filed notice of opposition to such registration. Testimony having been taken and submitted by both parties, on June 19, 1924, the examiner of interferences sustained the notice of opposition. On appeal from that action, the Assistant Commissioner of Patents, on August 27, 1925, reversed the decision of the said examiner and granted registration to Guarneri. From that decision, Di Santo has appealed to this court.

The testimony shows that Di Santo, the opposer, resides at Duluth, Minn., and for several years has been there conducting the business of an importer, jobber, distributor, and dealer in olive oil, tomato paste, malt syrup, cheese, raisins, garlic, macaroni, and other food products, all of which have been sold under the trade-name of "Mazzini." On May 13, 1919, Di Santo caused to be registered in the Patent Office a trade-mark for effervescent granular salts, a magnesia preparation, which mark consisted of a bust-size likeness of Giuseppi Mazzini, with the word, in large black-faced type, "Mazzini." On October 21, 1924, he also caused the registration of a trade-mark to be made for tomato paste, which mark consisted of the word "Mazzini" in outlined letters. Application has also been made by him for registration of the same mark on malt syrup or malt extract, the date of filing of which application does not appear from the record.

It also appears from the record that the word "Mazzini," sometimes associated with a likeness and sometimes without, has been used continuously by Di Santo, as a trade-name, upon effervescent salts, since 1916, upon tomato paste since February, 1923, and upon malt syrup or malt extract since 1920, in interstate commerce. The sales of tomato paste in particular, bearing this label, are shown to have been very large, and a considerable trade seems to have been conducted in effervescent salts and malt syrup of the same brand. In 1916, Di Santo determined to use the "Mazzini" brand on olive oil, and at that time, and soon thereafter, advertised olive oil under that brand. Because of war conditions, however, no oil could be imported, and none was sold in interstate commerce, under that brand, until July 1, 1924, since which time the trade-name of "Mazzini" has been used extensively by him in connection with sales of such oil.

Guarneri, the appellee, resides at Brooklyn, where he conducts the business of a wholesale and retail grocer. Since August

6, 1923, he has been selling olive oil bearing the trade-name "Mazzini," as described in his application for registration, in considerable quantities, sometimes aggregating 3,600 gallons in a year. There is some question about whether this has been sold in interstate commerce, but we think the record fairly shows that, since September, 1923, these goods have been so sold.

The testimony further shows that the Di Santo tomato paste is sold in cans, the exact size of which is not stated. The Guarneri olive oil is sold in one-quart, two-quart, one-gallon, and six-gallon cans. The testimony also shows that tomato paste and olive oil are ordinarily offered for sale together in grocery stores and other like retail establishments.

There is but one issue presented here. Di Santo, the opposer, claims that confusion is likely to arise in the trade which he claims to have established in goods of the same descriptive properties as those in which Guarneri desires to register his proposed trade-mark. On the other hand, Guarneri contends that, even conceding the prior use and registration of the trade-mark "Mazzini" upon effervescent salts, malt syrup, and tomato paste, these are not goods of the same descriptive properties as olive oil, and hence there can be no successful opposition here. [1] As to the use of this trade-name by Di Santo on olive oil, it does not appear that he in fact so used it until after Guarneri had put his product upon the market. What opposer may have intended to do cannot control. As was said in George v. Smith (C. C.) 52 F. 830: "The law deals with acts not intentions." See, also, Borden Ice Cream Co. v. Borden's Condensed Milk Co. (C. C. A.) 201 F. 510.

[2] It is manifest that the opposer had, long prior to the time when Guarneri first used the trade-name "Mazzini," built up a very considerable trade in food products, which we may safely assume was the result in part, at least, of the use of his trade-name and trade-mark. It must also be conceded that, if any of the food products which he thus sold are of the same descriptive qualities as olive oil, not only Di Santo, but the public as well, should be protected in the use of the trade-name "Mazzini." Without attempting to express any opinion as to whether effervescent salts and malt syrup or malt extract are goods of the same descriptive properties as olive oil, we are clearly of the opinion that tomato paste, sold as shown by the record here, is of the same descriptive properties.

In Williams v. Kern & Sons, 47 App. D. C. 441, this court held that self-raising pancake flour and corn meal were of the same descriptive properties, and remarked: "The test here is not in the likelihood of confusing the products, but the source from which they come."

In re Inderrieden Canning Co., 51 App. D. C. 214, 277 F. 613, involved the registration of the name "Peter Pan" as a trade-mark for canned peas and canned corn. It was rejected because of the prior registration of the same name as a trade-mark for canned pineapple. There Smyth, C. J., called attention to the fact that the prospective purchaser of canned peas would not likely be led by the confusion of marks to purchase pineapple, when he desired peas, but might be led to purchase the peas on the strength of the standing and reputation of the pineapple bearing the same brand.

In Imperial Cotto Sales Co. v. Fairbanks Co., 50 App. D. C. 250, 270 F. 686, the Fairbanks Company, the opposer, had used and registered the trade-mark "Cottolene" to designate a cooking fat made from cotton seed oil and oleostearine. The applicant desired subsequently to register the same name as a trade-mark for an animal feed composed principally of cotton seed. The opposition was sustained.

In California Packing Corporation v. Price Booker Mfg. Co., 52 App. D. C. 259, 285 F. 993, the applicant sought to register the word "Mission" as a trade-mark for flavoring extracts for foods, mustard, tomato catsup, relishes, made of chopped and ground pickles packed in spices and vinegar, chow chow, salad dressing, and vinegar. Opposer used the same mark, substantially, on canned fruits, canned vegetables, foods, and ingredients of food. The opposition was sustained.

The words "Aunt Jemima's," accompanied by the picture of a negress, laughing, as applied to pancake syrup, have been held an infringement upon the same trade-mark as applied to self-rising flour. Aunt Jemima Mills Co. v. Rigney & Co. (C. C. A.) 247 F. 407, L. R. A. 1918C, 1039.

This court, in California Packing Co. v. Halferty, 54 App. D. C. 88, 295 F. 229, held that canned fruit and canned salmon were of the same descriptive properties. In Heller & Co. v. Southern Cotton Oil Co., 55 App. D. C. 288, 4 F.(2d) 955, the word "Snow-

drift" had been registered as a trade-mark for a lard compound and for certain other shortening compounds. When it was sought to register the same mark for use in a preparation described as "a substitute for the white of eggs in the making of meringue," etc., registration was refused.

Attention is also called to Wolf & Sons v. Lord & Taylor, 41 App. D. C. 514, where men's, women's, and children's stockings were held to be of the same descriptive properties as knitted and textile undershirts, drawers, and union suits, and to E-Z Waist Co. v. Reliance Mfg. Co., 52 App. D. C. 291, 286 F. 461, where work shirts were held to be of the same descriptive properties as children's knitted waists.

[3] It is a matter of common knowledge that the products, tomato paste and olive oil, are both food products—one a condiment for the making of soups and relishes; the other principally used as an ingredient for sauces and salads. They are sold as canned goods, from the same establishments, and presumably to the same class of purchasers. The purchaser of olive oil would doubtless be led to purchase a brand with which he had become familiar as a purchaser of tomato paste. Thus confusion would result, and not only the maker of the tomato paste, but the public as well, would be deprived of the protection which it was obviously the purpose of the trade-mark statute to give. And if it be found that there is doubt as to whether such confusion will exist, it is the duty of the court to resolve that doubt against the newcomer. in the field. Waltke & Co. v. Schafer & Co., 49 App. D. C. 254, 263 F. 650.

For the reasons given, the decision of the Assistant Commissioner of Patents is reversed, and the opposition of Joseph Di Santo sustained.

ROBB, Associate Justice (dissenting). The question in this case is whether tomato paste and olive oil are goods of the same descriptive properties, within the meaning of the Trade-Mark Act (Comp. St. § 9485 et seq.), which prohibits the registration of deceptively similar marks when "appropriated to merchandise of the same descriptive properties." In other words, this is a statutory proceeding, and not an unfair competition case.

If we are to be governed by the terms of the statute, the decision below should be affirmed. See American Tobacco Co. v. Gordon, 56 App. D. C. 81, 10 F.(2d) 646.