CALIFORNIA PACKING CORPORATION v. TILLMAN & BENDEL, Inc.

Patent Appeal No. 2341.

Court of Customs and Patent Appeals. April 14, 1930.

Archibald Cox, of New York City, and Frank D. Madison, of San Francisco, Cal. (Wm. G. Henderson, of Washington, D. C., of counsel), for appellant.

Wm. S. Graham, of San Francisco, Cal. (George C. Shoemaker, of Washington, D. C., Herman Phleger and Maurice E. Harrison, both of San Francisco, Cal., and Harry F. Riley, of Washington, D. C., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an appeal from the decision of the Commissioner of Patents dismissing a no-

tice of opposition filed by the California Packing Corporation to the registration by Tillman & Bendel, Inc., of "Del Monte" as a trade-mark for coffee. Appellee's application was filed February 21, 1925.

The opposer, appellant, California Packing Corporation, in or about 1916 became the successor of the California Fruit Canners' Association, which, in 1899, was organized by the consolidation of a number of canners of fruits and vegetables. This consolidation included the Oakland Preserving Company. The latter company was organized in 1891 by F. Tillman, Sr., who was president of the corporation and owned a controlling interest in its stock. The business of the Oakland Preserving Company was canning fruits, vegetables, and preserves. Upon the consolidation of the Oakland Preserving Company with the California Fruit Canners' Association, F. Tillman, Sr., became a director in the new company and a member of the finance committee. Mr. F. Tillman, Sr., prior to and at the time of the organization of the Oakland Preserving Company, owned a controlling interest in Tillman & Bendel, wholesale grocers, and so continued until 1915, when he retired, his son later (1920) becoming president, upon reorganization. Upon the organization of the Oakland Preserving Company, the suggestion of F. Tillman, Sr., that the trade-mark "Del Monte" be used upon their fruits, vegetables, and preserves was approved by other interested officials. At the time it was generally known that there was a popular hotel in San Francisco by the name of Del Monte and both sides hereto agree that the name "Del Monte," as a trade name, is derived from the name of the Del Monte Hotel.

The California Packing Corporation, and its predecessors, since beginning originally to pack and sell fruits, vegetables, and preserves, has added gradually to its line of shelf goods until, in 1925, applicant put out 150 different "Del Monte" products which included many kinds of fruits and vegetables, canned, dried, and preserved, also pork and beans, relishes, sauces, tomato paste, sauerkraut, pork and sauce, jelly, honey, fruit juices, pickles, chow-chow, salmon, tuna, milk, applesauce, mustard, olive oil, apricot kernel oil, fruit salad, vinegar, sardines, macaroni, noodles, and spaghetti. Appellant's business of manufacturing and selling said products under its trade-mark, of which the name "Del Monte" is the most conspicuous part, has grown to an aggregate of over $30,000,000 per year and its outlay on advertising has amounted to over $11,000,000.

The testimony indicates that all of its materials are of very high grade, and all of the products are sold in grocery stores. From the beginning its business has been a growing and expanding one, new canned, bottled, preserved, and dried products being added to its line from time to time. It has never handled tea or spices and has only dealt in coffee to the extent that it regarded necessary for it to comply with trade-mark requirements, in anticipation, evidently, of making application for the registration of a trade-mark.

The record discloses that appellee, prior to the organization of the Oakland Preserving Company, sold coffee to the Hotel Del Monte, and that the manager of the hotel required that the coffee and other goods he purchased of Tillman & Bendel, in drums, be stenciled and marked with the name "Del Monte"; that later certain retail dealers desired to sell "Del Monte" coffee; that the coffee was sold in drums, gunnysacks, and in different bulk wholesale quantities, the containers for which were stenciled or marked "Del Monte." The record also contains testimony to the effect that empty paper bags, lined with oiled paper, for holding one pound of coffee, were furnished retail dealers so that they might sell the "Del Monte" coffee in pound packages, and there is some testimony to the effect that Tillman & Bendel filled the one-pound bags and placed them in sealed drums or cans and sold them to retail dealers. There is also some evidence to the effect that "Del Monte" coffee was sold by Tillman & Bendel in containers ranging from two pounds on up.

It is not contended by Tillman & Bendel that they have ever sold or offered for sale "Del Monte" coffee or any other kind of coffee in one pound tins. Applicant's proposed trade-mark not only calls for the use of the name "Del Monte," but it is to be used on tin containers, vacuum-sealed, labeled "net contents one pound."

Applicant contends that it is entitled to register its proposed "Del Monte" trade-mark for two reasons: First, because coffee is not of the same descriptive properties as any of the goods produced and sold under the name "Del Monte" by appellant, and therefore comes within the provision of section 5 of the Trade-Mark Act of 1905 (15 USCA § 85), which provides that "no mark by which the goods of the owner of the mark may be distinguished from other goods of the same class shall be refused registration," etc.; second, that appellant has never used the trade-mark on coffee, or goods of the same

descriptive properties, and that appellee has, since prior to the early "'90's," used the words "Del Monte" as a trade-mark on coffee, and that it has continuously used the said mark on coffee to this date.

The first proviso in section 5, supra, is as follows:

"*Provided*, That trade-marks which are identical with a registered or known trademark owned and in use by another and appropriated to merchandise *of the same descriptive properties*, or which so nearly resemble a registered or known trade-mark owned and in use by another and appropriated to merchandise *of the same descriptive properties as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers shall not be registered.* * * * *"* (Italics not quoted with exception of first word.)

The trade-marks are identical and if the goods upon which applicant seeks to use the trade-mark are "of the same descriptive properties as to be likely to cause confusion," etc., registration must be denied, and our determination of this question, we think, decides this case.

Thousands of pages have been written by the courts in construing the last-quoted provision and there are but few statutory phrases which have produced so much variance and conflict of judicial opinion. Some courts have consistently and repeatedly urged that the term "of the same descriptive properties" must be given its ordinary and colloquial meaning, and that if the two classes of goods in controversy differ in their distinguishing characteristics, they are not goods of the same descriptive properties, even though their general and essential characteristics, together with the manner in which they are sold and used are sufficiently similar to permit of confusion as to whether the goods of the one are the goods of the other. In this class of decisions may be listed the following: Muralo Co. v. National Lead Co., 36 App. D. C. 541, 545; George v. Smith (C. C.) 52 F. 830; Cheek-Neal Coffee Co. v. Hal Dick Mfg. Co., 151 M. D. 720, 18 T. M. Rep. 465 (July 30, 1928); American Tobacco Co. v. Gordon, 56 App. D. C. 81, 10 F.(2d) 646; and in Anhauser-Busch Brg. Ass'n v. Peter Stumpf Brg. Co. et al., 129 O. G. 3501, where beer, wines and distillates were held not to be goods of the same descriptive properties.

On the other hand, we think the great weight of authority is to the effect that "the dominant purpose of that part of the section here involved is the prevention of confusion and deception," and that in determining the meaning of the phrase "merchandise of the same descriptive properties," controlling consideration must be given to the question as to whether or not the goods are similar to the extent that confusion, deception, or mistake will result to the public or to purchasers, and if the goods are sufficiently similar, that the use of an identical trade-mark on the goods of both will result in the goods of one being regarded by the purchaser as the goods of the other, that they are to be regarded as goods of the same descriptive properties.

The line of decisions first referred to, which apply the colloquial meaning to the phrase, are controlled in the most part by the thought expressed most definitely in Muralo Co. v. National Lead Co., supra, and George v. Smith, supra. In the Muralo Co. Case we find the following language used: "The purchaser has some definite use in view, and must know whether he wants white lead to compound into paint, or for other purposes, or whether he wants kalsomine. * * * He knows whether he wants white lead or kalsomine, and, unless mentally defective, an unprincipled salesman could not induce him to take one for the other."

In George v. Smith, supra, it was said: "No one who has not permanently parted with his wits could purchase a can of salmon supposing he was getting a can of tomatoes."

Since the decision of the United States Supreme Court in American Steel Foundries v. Robertson, 269 U. S. 372, 46 S. Ct. 160, 162, 70 L. Ed. 317, the courts have, with almost complete unanimity, abandoned the view that in construing the words "merchandise of the same descriptive properties" they were used in the colloquial sense and in the sense indicated by the last two cited authorities. In American Steel Foundries v. Robertson, supra, the word "simplex" as part of a corporate name involved a consideration of what Congress intended by the enactment of the federal trade-mark law, a part of which is under consideration here. Mr. Justice Sutherland, speaking for the court, announced the doctrine that: " 'The law of trade-marks is but a part of the broader law of unfair competition' * * * the general purpose of which is to prevent one person from passing off his goods or his business as the goods or business of another."

After discussing the use of identical names and other related subject-matter, the court said: "These principles, it must be assumed, were in mind when Congress came to enact the registration statute. And, since that

body has been given no power to legislate upon the substantive law of trade-marks, it reasonably may be assumed, also, that to the extent the contrary does not appear from the statute, the intention was to allow the registration of such marks as that law, and the general law of unfair competition of which it is a part, recognized as legitimate. The House committee on patents, in reporting the bill which upon enactment became the registration statute in question, said: 'Section 5 of the proposed bill we believe will permit the registration of all marks which could, under the common law as expounded by the courts, be the subject of a trade-mark and become the exclusive property of the party using the same as his trade-mark.' Report No. 3147, Dec. 19, 1904, H. of R. 58th Cong., 3d Sess."

In that case we think the Supreme Court said nothing more nor less (as applicable to the case at bar) than that Congress had no power to make trade-marks valid which were invalid under the common law, since the Constitution gave it no power to legislate upon the substantive law of trade-marks; that the only power Congress had was to pass legislation not inconsistent with such substantive law. Congress, therefore, by the use of the words "merchandise of the same descriptive properties," could not be presumed to have authorized the registration of a trade-mark for public use which use could be prevented by resort to the common law. (See Hopkins on Trade-marks, Trade-names and Unfair Competition [4th Ed.] p. 49.) While in courts of equity there may be principles of law applied in actions concerning unfair trade practices and unfair competition, growing out of trade-marks, which are not applicable in proceedings like that at bar, the law, nevertheless, must be the same in both jurisdictions regarding the question of the probability of confusion. It is inconceivable that Congress, in its efforts to lessen confusion, deceit, and mistake in connection with the use of trade-marks, which must be regarded by the courts as prima facie evidence of ownership, intended to authorize the registration of a trade-mark which was invalid at common law and thus arm the registrant with a weapon, impotent for good but virile for mischief. Levy v. Uri, 31 App. D. C. 441; Thaddeus Davids Co. v. Davids, 233 U. S. 461, 469, 34 S. Ct. 648, 58 L. Ed. 1046.

We conclude, therefore, that the meaning of the phrase "merchandise of the same descriptive properties" must not only be ascertained in the light of the use of the words "goods of the same class," in the first part of section 5 (15 USCA § 85) and the words "of [substantially] the same descriptive properties" in section 16 of the Trade-Mark Act (15 USCA § 96), but must also be construed in connection with the predominant phrase of the provision "as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers," and the predominant word "distinguished" in the first part of the section.

By the first part of section 5, Congress makes mandatory the registration of any mark *by which the goods of the mark's owner may be "distinguished" from other goods of the same "class,"* with certain exceptions. This provision is *inclusive*. The proviso which follows, while *exclusive* in character, certainly excludes no mark for any goods which are included in the first part. The two provisions are directed toward the same purpose and must not be regarded as having opposite tendencies. Therefore, the right to register depends upon the distinguishing dissimilarity between the goods or the marks. The same degree of difference in the marks or goods or both must exist so as to *distinguish* the goods of the owner as is required to prevent the probability of "confusion or mistake in the mind of the public," etc. This *distinguishing difference* or *indistinguishable similarity* may rest not only in the "essential characteristics" of the goods themselves with reference to their form, composition, texture, and quality, but may rest in the use to which they are put, the manner in which they are advertised, displayed, and sold, and probably other considerations. The question as to whether confusion and failure to distinguish will result may also depend largely upon the class of purchasers, or persons concerned.

As was aptly said in Yale Electric Co. v. Robertson (C. C. A.) 26 F.(2d) 972, 974, there must "be enough disparity in character between the goods of the first and second users as to insure against confusion." In support of this view many cases may be cited; however, a few cited here and others cited elsewhere in this opinion will suffice. I. E. Palmer Co. v. Nashua Mfg. Co. (Cust. & Pat. App.) 34 F.(2d) 1002; Aunt Jemima Mills Co. v. Rigney & Co. (C. C. A.) 247 F. 407, L. R. A. 1918C, 1039; Akron-Overland Tire Co. v. Willys-Overland Co. (C. C. A.) 273 F. 674; Vogue Co. v. Thompson-Hudson Co. (C. C. A.) 300 F. 509; Rosenberg Bros. & Co. v. Elliott (C. C. A.) 7 F.(2d) 962; Layton Pure Food Co. v. Church & Dwight Co. (C. C. A.) 182 F. 35; Charles Broadway

Rouss, Inc., v. Winchester Co. (D. C.) 290 F. 463.

Applying this rule to the facts at hand, if one-pound sealed cans of coffee in grocery stores, on the same shelves with 150 other sealed cans or containers of groceries such as are shown to be the product of appellant, might be mistaken for the goods of appellant, when identical trade-marks are used and both are sold to the same class of purchasers, then the goods are of the same descriptive properties and fall within the provision of the proviso, and the trade-mark "Del Monte" for such coffee is not registerable by appellee.

In applying the rule, which we regard as sound both on reason and authority, we are not inclined to extend the same beyond the limitations within which the courts have heretofore applied it. The mere fact that some indefinite and far-fetched confusion is to be shown or pointed out does not necessarily require that the goods shall be regarded as of the same descriptive properties. The product of the "chewing gum maker" and that of the "ironmonger" can hardly be said to possess such common characteristics, either in texture, quality, sale, or use as to permit of confusion, certainly not in the absence of proof. The same may be said of clothespins and dried herrings. True enough, manufacturing concerns make, and department stores and sales agencies sell, a more varied and miscellaneous line of goods now than in past years. This consideration argues for and not against our conclusion herein reached since it will not be presumed that the Congress was ignorant of this growing tendency of the trade, confusion in which it, by the trade-mark act, sought to minimize.

As pertaining to the registration of trade-marks, the Court of Appeals of the District of Columbia has, for a quarter of a century, and until April 2, 1929, possessed the identical jurisdiction which we now possess. It also had (and now has) the additional appellate trade-mark jurisdiction in passing upon equity cases arising in the Supreme Court of the District of Columbia. The same problem that confronts us now has confronted it during all this time and it has probably passed upon more trade-mark cases, involving the question here presented, then all the other courts combined, within the same period. It must be conceded that prior to the decision of the Supreme Court of the United States in the American Steel Foundries Case, supra, there was much conflict between the different pronouncements of the District Court of Appeals on the question here involved as is evidenced by Levi v. Uri, supra; California Packing Corp. v. Price-Booker Mfg. Co., 52 App. D. C. 259, 285 F. 993, and Heller & Co. v. Southern Cotton Oil Co., 55 App. D. C. 288, 4 F.(2d) 955, on the one hand, and American Tobacco Co. v. Gordon, supra, and Muralo Co. v. National Lead Co., supra, on the other.

After its decision in the American Tobacco Co. Case, and after the Supreme Court's decision in the American Steel Foundries Case, we find the Court of Appeals of the District of Columbia almost unanimously and uniformly holding that goods were of the same descriptive properties, when considered with reference to trade-mark registrability, if the goods in their characteristics, sale or use were sufficiently similar to permit the goods of the one to be taken by the public as the goods of the other—*the question of confusion being the test*. In Duro Pump & Mfg. Co. v. California Cedar Products Co., 56 App. D. C. 156, 11 F.(2d) 205, pumps and wall board were held to be goods of the same descriptive properties, since the court concluded that confusion would result. The same was the holding in Macy & Co. v. Carter & Sons, 56 App. D. C. 249, 12 F.(2d) 190, as to men's clothing and hosiery; in Haas Bros. Fabrics Corp. v. Bliss, Fabyan & Co., 57 App. D. C. 44, 16 F.(2d) 540, as to crinkly fabrics of cotton and artificial silk; in Di Santo v. Guarneri, 57 App. D. C. 89, 17 F.(2d) 677, 679, as to olive oil and tomato paste; in Blek Co. v. Mishawaka Rubber & Woolen Mfg. Co., 57 App. D. C. 149, 18 F.(2d) 149, as to garments and socks; in Kassman & Kessner v. Rosenberg Bros. Co., 56 App. D. C. 109, 10 F.(2d) 904, as to men's hats and caps, and men's suits and overcoats; in Lincoln Motor Co. v. Lincoln Mfg. Co., 58 App. D. C. 191, 26 F.(2d) 563, as to automobiles and brakes and timers, and in Re Defender Mfg. Co., 58 App. D. C. 234, 26 F.(2d) 1012, as to sheets and piece goods.

In the Di Santo Case, supra, in an opinion by Judge GRAHAM, of this court, then sitting with the Court of Appeals, the identical trade-mark "Mazzini" as applicable to olive oil and tomato paste was under consideration. In reversing the decision of the Assistant Commissioner of Patents, the court there said: "It is a matter of common knowledge that the products, tomato paste and olive oil, are both food products—one a condiment for the making of soups and relishes; the other principally used as an ingredient for sauces and salads. They are sold as canned goods, from the same establishments, and

presumably to the same class of purchasers. The purchaser of olive oil would doubtless be led to purchase a brand with which he had become familiar as a purchaser of tomato paste. Thus confusion would result, and not only the maker of the tomato paste, but the public as well, would be deprived of the protection which it was obviously the purpose of the trade-mark statute to give. And if it be found that there is doubt as to whether such confusion will exist, it is the duty of the court to resolve that doubt against the newcomer in the field. Waltke & Co. v. Schafer & Co., 49 App. D. C. 254, 263 F. 650."

We think the decision in the Di Santo Case is supported by the overwhelming weight of recent authority and that the principle announced therein is controlling in the issue at bar. If tomato paste and olive oil are of the same descriptive properties to the extent that confusion would result from the fact that the purchaser might be led to believe that the producer of the olive oil produced the tomato paste, likewise in the case at bar, we conclude that coffee in one-pound tin cans, sold in grocery stores to the same customers who buy the 150 grocery food products manufactured by appellant, would also lead to confusion and mistake in the purchaser believing that the coffee of appellee was the goods of appellant, and, as announced in that case, we reiterate here that if there was any doubt on the subject, it should be resolved against the applicant. The doctrine of the subject of doubt emanates from and is prompted by the fact that the applicant has the whole world to select from and it is no hardship to require him to select a trade-mark which will eliminate the probability of confusion. Kassman & Kessner v. Rosenberg Bros. Co., supra.

Appellee argues at great length that it should be permitted to register its trade-mark because it was the prior user on coffee as stated hereinbefore, apparently from the standpoint that our decision as to the registrability of its trade-mark in this action would be controlling of its right to use the name "Del Monte" on coffee. We are only concerned in this action with appellee's right of *registration* of the trade-mark and not with its *use* of the same. As to whether appellee, in law, has the right to use the trade-name "Del Monte" on coffee in containers of any description, or whether it has the right to use it in markets confined to the West coast or throughout the world, are questions not before us and are not decided. We do decide that such a statement of facts is not shown here as would warrant this court in saying that appellee was entitled to the *exclusive* use of the words on coffee, the right to such exclusive use being implied from the right to registration. The goods being of the same descriptive properties, so that the registration of the proposed trade-mark will lead to confusion, the statute requires that registration be denied, irrespective of other legal rights between the parties. (Note, Beech-Nut Co. v. Lorillard Co., 273 U. S. 629, 47 S. Ct. 481, 71 L. Ed. 810, was an action for infringement and not concerning registration.)

It is finally argued by appellee that appellant's trade-mark "Del Monte" had a wide use on sardines, meats, candies, and several other articles prior to and coincident with its use by either appellee or appellant, and that because of this fact, appellee contends that opposer's trade-mark must be "strictly construed and narrowly limited to specific goods." This argument would seem to lead only in the direction of the conclusion that appellant had no right to its numerous registrations for food products already granted. See Thaddeus Davids Co. v. Davids, supra. We are not passing upon this question. "Del Monte" is a registered trade-mark for about 150 well-known food products manufactured and sold by appellant. The statute prevents the registration of "Del Monte" on goods of similar description to those upon which "Del Monte" is affixed under a registered or known trade-mark. In urging the registrability of appellee's trade-mark as against the identical mark of the opposer, it is, to say the least, not helpful for applicant to point out that others have used the same or a similar mark prior to opposer's use of the same. Sharpe & Dohme v. Parke, Davis & Co. (Cust. & Pat. App.) 37 F.(2d) 960. See, also, Del Monte Special Food Co. v. California Packing Corporation (C. C. A.) 34 F.(2d) 774. Thaddeus Davids Co. v. Davids, supra, is squarely in point here.

Del Monte Special Food Co. v. California Packing Corporation, supra, decided by the Circuit Court of Appeals, Ninth Circuit, last year, and the case of Eastman Photographic Materials Co. v. Kodak Cycle Co., 15 Reports Patent Cases 105, strongly support the conclusion and reasoning herein.

In the Del Monte Case, supra, the Circuit Court of Appeals affirmed the judgment of the District Court enjoining the Del Monte Special Food Company from the use of the word "Del Monte" in connection with the marking of oleomargerine or other food

products. The Yale Electric Corporation Case was cited with approval. It was found that confusion would result, and, in substance, that the infringer was trying to pass his goods off for the goods of the California Packing Corporation.

The Eastman Case, supra, was an English case in which the Eastman Photographic Materials Company brought an action for the purpose, among other things, of canceling the trade-mark of the Kodak Cycle Company as applied to bicycles. The court there held that confusion would result in the fact that purchasers would assume that bicycles made by the one were the property of the other and that the public would thereby be deceived, and the registration was canceled.

In the case at bar confusion is proved, but aside from the proved confusion, it is obvious to us that confusion would result. In Nestle & Anglo-Swiss Condensed Milk Co. v. Walter Baker & Co., Ltd., 37 App. D. C. 148, the court said: "In a trade-mark case involving the question whether there is such a similarity between two marks as will cause confusion in trade, an ocular inspection of the marks constitutes the most satisfactory evidence."

The decision of the Commissioner is reversed.

Reversed.

GARRETT and LENROOT, Associate Judges (specially concurring).

While concurring in the conclusion reached by the majority in this case, we are not in accord with all the reasoning upon which that conclusion is based.

We think the decision should rest upon practically the same grounds as those expressed in Cheek-Neal Coffee Co. v. Hal Dick Mfg. Co., 40 F.(2d) 106, decided concurrently herewith, and upon the reasoning in the specially concurring opinion in Goodrich Co. v. Hockmeyer, 40 F.(2d) 99, also decided on this day.

The effect of the majority opinion, as we construe it, is to give an undue emphasis to confusion without first determining the issues of "class" and "same descriptive properties" which are elements that, in contemplation of the statute, must be present to cause the confusion. It is said: " * * * If one pound sealed cans of coffee in grocery stores, on the same shelves with 150 other sealed cans or containers of groceries such as are shown to be the product of appellant, might be mistaken for the goods of appellant, when identical trade-marks are used

and both are sold to the same class of purchasers, then the goods are of the same descriptive properties and fall within the provision of the proviso. * * * "

It seems to us that the effect of this reasoning is largely to make the mark itself, *after* it has been applied, the predominating element in determining whether confusion in origin may result and thus determine similarity of class or descriptiveness of properties, not so much from the nature and characteristics of the goods themselves as from the marks that may be applied to them.

In the administration of the Trade-Mark Act of 1905, the duties of the Patent Office are purely statutory, and the authority of this court, when it is invoked by an appeal, is limited in the same manner that the Patent Office is limited. We do not think we are clothed with the equitable jurisdiction inherent in the common-law courts and conferred by law upon those federal and District of Columbia courts having equity jurisdiction. Vide Postum Cereal Co. v. Calif. Fig Nut Co., 272 U. S. 693, 698, 699, 47 S. Ct. 284, 71 L. Ed. 478.

It seems to us that if the doctrine of the majority opinion be followed to its logical end there may be brought into the determination of matters arising under the Registration Statute questions that belong only to equity courts and which we do not think Congress intended to place within the Patent Office jurisdiction, or within the jurisdiction of this court, in registration proceedings. We fear that we are about to assume a jurisdiction which Congress never intended we should exercise in mere administrative or statutory proceedings.

The majority say: "We conclude, therefore, that the meaning of the phrase 'merchandise of the same descriptive properties' must not only be ascertained in the light of the use of the words 'goods of the same class,' in the first part of section 5 [15 USCA § 85], and the words 'of substantially the same descriptive properties' in section 16 of the Trade Mark Act [15 USCA § 96], but must also be construed in connection with the *predominant* phrase of the provision 'as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers,' and the *predominant* word 'distinguished' in the first part of the section." (Italics ours.)

This holds, as we understand it, that greater emphasis is to be given a result than is placed upon the causes producing it. It reasons from effect back to cause, and virtu-

ally amounts to saying that if confusion as to origin may result from the application of the mark, that will be taken as conclusive of the fact that the statutory elements which, under certain circumstances, prohibit registration—similarity of class and descriptiveness—are present. This seems to us a strained construction of the statute, and does not give to the words "same class" and "same descriptive properties," used in the statute, the consideration which is their due.

We do not think we are at liberty to relegate those phrases to a state of practical unimportance, and declare the condition they describe will be inferred to exist because we believe confusion might exist.

It seems to us that the natural and orderly way to apply the statute is to determine, first, whether the goods are of the same class and of the same descriptive properties, and then look to the character of the mark so as to ascertain whether its application would cause confusion. The reasoning of the majority opinion apparently would have it first determined whether by reason of the application of the mark there might be confusion, and, if so, would conclude from this the existence of sameness or similarity.

It is true that the majority opinion says: "The mere fact that some indefinite and far-fetched confusion is to be shown or pointed out does not necessarily require that the goods shall be regarded as of the same descriptive properties," and gives certain illustrations by comparing products of the "chewing-gum maker" and the "ironmonger" as well as "clothes pins" and "dried herrings." But this seems to us merely to mean that before any particular consideration need be given to the statutory words, other than confusion, there must be such a difference as that those words might as well never have been included in the statute.

It seems to us that for all practical purposes the majority opinion can be readily and logically so extended as virtually to eliminate class sameness and similar descriptiveness from the act and deny registration where the marks are identical or so resemble each other as that confusion of origin may be believed possible simply as a result of the application of the mark.

Since the words are in the statute we think it our duty to give them effect, and feel that the test should be made from a consideration of the characteristics of the goods themselves which are to produce the effect, and not by taking a mere possible result as conclusive of its causes.

The majority opinion contains the following statement: "After its decision in the American Tobacco Co. Case, and after the Supreme Court's decision in the American Steel Foundries Case, we find the Court of Appeals of the District of Columbia almost unanimously and uniformly holding that goods were of the same descriptive properties, when considered with reference to trademark registrability, if the goods in their characteristics, sale or use were sufficiently similar to permit the goods of the one to be taken by the public as the goods of the other—*the question of confusion being the test.* In Duro Pump & Mfg. Co. v. California Cedar Products Co., 56 App. D. C. 156, 11 F. (2d) 205, pumps and wall board were held to be goods of the same descriptive properties, since the court concluded that confusion would result. The same was the holding in Macy & Co. v. Carter & Sons, 56 App. D. C. 249, 12 F.(2d) 190, 191, as to men's clothing and hosiery; in Haas Bros. Fabrics Corp. v. Bliss, Fabyan & Co., 57 App. D. C. 44, 16 F.(2d) 540, as to crinkly fabrics of cotton and artificial silk; in Di Santo v. Guarneri, 57 App. D. C. 89, 17 F.(2d) 677, as to olive oil and tomato paste; in Blek Co. v. Mishawaka Rubber & Woolen Mfg. Co., 57 App. D. C. 149, 18 F.(2d) 191, as to garments and socks; in Kassman & Kessner v. Rosenberg Bros. Co., 56 App. D. C. 109, 10 F.(2d) 904, as to men's hats and caps, and men's suits and overcoats; in Lincoln Motor Co. v. Lincoln Mfg. Co., 58 App. D. C. 191, 26 F.(2d) 563, 564, as to automobiles and brakes and timers, and in Re Defender Mfg. Co., 58 App. D. C. 234, 26 F.(2d) 1012, 1013, as to sheets and piece goods."

We have carefully examined the authorities cited in the quotation, and it is our opinion that the majority is in error in holding that, in the cases cited, confusion was the test of whether the goods were of the same descriptive properties, as that phrase is used in said section 5 (15 USCA § 85).

The first case cited, Duro Pump & Mfg. Co. v. California Cedar Products Co., supra, did not involve in any way the question in the case at bar. That case involved the use of a part of a corporate name, and the case arose under the second proviso of section 5, which proviso does not contain the words "same descriptive properties." Obviously, in deciding that case, the construction of the words "same descriptive properties," contained in the section, was not involved, and it was clearly proper to apply the test of confusion irrespective of whether the goods

of the parties were of the same descriptive properties.

We might add that the above observations are also applicable to the American Steel Foundries Case, 269 U. S. 372, 46 S. Ct. 160, 70 L. Ed. 317.

In the cited case of Haas Bros. Fabrics Corp. v. Bliss, Fabyan & Co., supra, the court said: " * * * the goods in question, as shown by certain of the exhibits, are of the same descriptive properties, and that the purchasing public, seeing them sold under the same mark, would naturally believe that they had the same commercial origin in point of manufacture or marketing."

Here clearly the court first found that the goods were of the same descriptive properties without applying the test of confusion, and the confusion test was applied only as between goods possessing the same descriptive properties.

In the case of Di Santo v. Guarneri, cited and thereafter quoted from and discussed in the majority opinion herein, the opinion was written by Presiding Judge GRAHAM of this court, sitting as a member of the Court of Appeals of the District of Columbia, as provided by law.

In that opinion Judge GRAHAM expressly held that the goods there involved were of the same descriptive properties, and he made no mention of *confusion* in arriving at that determination. He applied the test of confusion only as to trade-marks on goods possessing the same descriptive properties; that is, he first determined class or descriptive properties, and then inquired into confusion, as we contend section 5 clearly requires.

The case of Blek Co. v. Mishawaka Rubber & Woolen Mfg. Co., supra, throws no light whatever upon the question under discussion.

In Kassman & Kessner v. Rosenberg Bros. Co., supra, the court expressly held that the goods were of the same descriptive properties, and there is no reference in the opinion to confusion in arriving at that conclusion.

In Lincoln Motor Co. v. Lincoln Mfg. Co., supra, the court said: " * * * the marks are not only deceptively similar, but were applied to goods of the same descriptive properties, to an extent that would inevitably lead to confusion."

Here clearly is stated the proposition for which we contend, and that is that confusion is the *result* of a deceptively similar mark being applied to goods of the same descriptive properties, and not the test of whether the goods have such properties.

In the case of In re Defender Mfg. Co., supra, the court held that "the goods possess the same descriptive properties," and there is no reference in the opinion to the test of confusion being applied in reaching that conclusion.

From our examination of the authorities cited, there is only one that makes any reference to the doctrine asserted in that part of the majority opinion last quoted, and that is the case of Macy & Co. v. Carter & Sons., supra.

In that case it was expressly held that the goods "belong to the same general class of merchandise," and in that connection no reference was made to confusion. Later in the opinion, however, it was stated that where confusion results in the minds of purchasers, goods may be said to be of the same descriptive properties; but we believe this is the only case decided since the decision in the American Steel Foundries Case, supra, where the doctrine adopted in the majority opinion is even referred to.

On the other hand, there have been a large number of cases decided by the Court of Appeals of the District of Columbia, in addition to those cited in the majority opinion, where goods were decided to be, or not to be, of the same descriptive properties without any reference to confusion as a test in arriving at that conclusion.

It is our view that a careful examination of all the cases decided by that court, including those cited in the majority opinion, compels the conclusion that they do not sustain the position taken by the majority upon this question.