**SUN–MAID RAISIN GROWERS OF CALIFORNIA v. AMERICAN GROCER CO.**

Patent Appeal No. 2282.

Court of Customs and Patent Appeals.

April 14, 1930.

Miller & Boyken, of San Francisco, Cal. (George W. Dorr and Charles R. Allen, both of Washington, D. C., of counsel), for appellant.

B. G. Foster, of Washington, D. C., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

The American Grocer Company, appellee herein, was the applicant in the Patent Office for the registration of a trade-mark hereinafter described. The Sun-Maid Raisin Growers of California were the opposers. The mark which was sought to be registered by the applicant is the word "Sun-Maid" placed above a representation of a small girl in a standing position, holding a bundle of wheat in each arm. Behind the girl's head and shoulders is the upper half of a disk which represents the sun radiating light. It is not disputed but that this proposed trade-mark is quite similar to the trade-mark used by opposer. Appellant styles it "A Chinese copy" of the same. When placed side by side differences are apparent, but only in detail— the maid of applicant appears younger than the maid of opposer and bundles of wheat are substituted for a tray of grapes.

Applicant seeks registration for the mark to be used for wheat flour which is sold in barrels and other containers to bakers and grocers and its alleged first date of use is August 5, 1926. Opposer's use of the trademark antedated that of applicant by eleven years, and since 1905 it has been used on a large variety of goods. Its use began on dried raisins, and since 1905 the line of merchandise manufactured and sold by opposer under said trade-mark has been extended until at the date of filing the opposition, opposer had six different registrations in the Patent Office used on many different kinds of dried fruits, also raisin-seed, salad oil, mince meat, raisins and nuts, dried fruits and raisins, candy, canned raisins, flavoring extracts, nuts, table syrup, rice, sauces for food flavors, vinegar, edible oil, molasses, breakfast cereals, baking powder, cornstarch, pie fruit, and raisin syrup.

One of the trade-marks registered by the opposer in 1924, consists of the words "Sun-Maid Baker," which are placed on a baker's cap worn by a man in baker's uniform, holding a cut loaf of fruit or raisin bread in his hand, the fruit or raisins showing at the end of the loaf.

The Sun-Maid Raisin Growers of California are the manufacturers and sellers of products grown by the Sun-Maid Raisin Growers' Association. All of the stock of the

latter is owned by the former. The allied companies, according to the record, up to May 31, 1927, had spent over $14,000,000 in advertising the Sun-Maid products, and up to that time, the value of the products handled was more than $198,000,000, and they were sold extensively throughout the entire United States and practically every civilized country in the world.

The Examiner of Trade-Mark Interferences dismissed the notice of opposition and adjudged that the applicant be entitled to registration on the ground that the merchandise upon which applicant sought to use and had used its trade-mark was not of the same descriptive properties as the merchandise of opposer. Upon appeal, the Commissioner affirmed the action of the Examiner and held that table syrup, raisin syrup, cereals, and baking powder were not merchandise of the same descriptive properties as wheat flour.

The record discloses that raisin syrup is chiefly used by and sold to the baking trade and is sold in barrels and in five-gallon cans and that it is used for making raisin bread and other related pastry products, and is also used to a certain extent for table purposes. The American Grocer Company, applicant, located at Little Rock, Ark., sells flour in barrels to the same baking trade in Arkansas and elsewhere to which opposer sells its line of goods, both selling under the trade-mark name "Sun-Maid."

The record offers no reason why applicant seeks to use a trade-mark almost identical with that of opposer, but the reason to us seems obvious. Applicant hopes to profit from the well-advertised and favorably known merchandise sold by opposer. That confusion would result in the mind of the public and to the purchasers of goods, if applicant used his proposed Sun-Maid trade-mark on wheat flour, we think is more than probable. No proof of actual confusion is necessary in this case. Patton Paint Co. v. Orr's Zinc White, 48 App. D. C. 221; A. Leschen & Sons Rope Co. v. Broderick & Bascom Rope Co., 36 App. D. C. 451.

It seems to be the position of the Patent Office and of the applicant that as affects the goods at bar, it is immaterial if confusion and deceit result as long as the merchandise of the one is not of the "same descriptive properties" as the merchandise of the other, giving the phrase "same descriptive properties" its ordinary and restricted meaning.

To so conclude is to lose sight of the trade-mark legislation as a whole and the purpose of its enactment. "'The law of trade-marks is but a part of the broader law of unfair competition' * * * the general purpose of which is to prevent one person from passing off his goods or his business as the goods or business of another." American Steel Foundries v. Robertson, 269 U. S. 372, 46 S. Ct. 160, 162, 70 L. Ed. 317. Congress by the enactment of the Trade-Mark Act of 1905 (15 USCA §§ 81–109) never intended to authorize the registration of a trade-mark, the use of which could be prevented by resort to common law. See California Packing Corp. v. Tillman & Bendel, Inc., 40 F.(2d) 108, and B. F. Goodrich Co. v. Clive E. Hockmeyer (Zip-On Mfg. Co., substituted), 40 F.(2d) 99, both decided concurrently herewith. Also, see Yale Electric Corp. v. Robertson (C. C. A.) 26 F.(2d) 972, and Levy v. Uri, 31 App. D. C. 441.

Congress was given no constitutional authority to pass legislation concerning trademarks inconsistent with the common law (American Steel Foundries v. Robertson, supra), and we think it is obvious from the context of the act and the report of the committee which reported the trade-mark bill that it never intended to do so (Id.). The dominant purpose of the trade-mark act was to protect the public and purchasers against confusion. It never intended that a trademark should be registered if its use was likely to cause confusion or mistake in the mind of the public or if purchasers were likely to be deceived by its use.

Taking into consideration all the facts in this case, is it free from doubt that a customer who used the above-described flour, raisins, raisin syrup, and baking powder in baking bread and pastries would not conclude that the flour was produced and sold by the same person who sold and produced the other articles? Confusion in origin, we think, would be likely to result even though the articles differed in many of their inherent characteristics. The fact that raisin syrup is a liquid, while wheat flour is a powdered grain, and that one is the product of a fruit and the other of a cereal, under the circumstances of this case would not insure against confusion where identical or almost identical trade-marks are used.

In determining whether the merchandise of one is of the same descriptive properties as the merchandise of another, within the meaning of the proviso in section 5 of the

Trade-Mark Act (15 USCA § 85), we must take into consideration what Congress was attempting to do. In its attempt to prevent confusion was confusion as to the origin of the goods in mind? If it was not, then its legislative effort would not be in furtherance of and in harmony with the common law but a step in another direction. We must not impute such an intent to the framers of the act.

It will not be seriously contended here or elsewhere, we think, that confusion in origin which results from the fact that one person by the use of another's trade-mark leads the public to believe that his goods are made by the other, is not mischief which equity will prevent. Aunt Jemima Mills Co. v. Rigney & Co. (C. C. A.) 247 F. 407, L. R. A. 1918C, 1039; Del Monte Special Food Co. v. California Packing Corp. (C. C. A.) 34 F.(2d) 774.

In sections 16, 17, 18, 19, 20, and 21 of the Trade-Mark Act (15 USCA §§ 96–101), great care was taken to provide for actions at law and equity for the purpose of carrying out the intent of the law. "Confusion" in the Patent Office in connection with the registration of a trade-mark should mean the same as "confusion" in a court of equity where the use of the trade-mark is in dispute. In determining what Congress meant by the words "merchandise of the same descriptive properties" we must read them in connection with the words "goods of the same class" in the first part of the section and "merchandise of substantially the same descriptive properties" in section 16 of the Act (15 USCA § 96). The provision for opposition in section 6 (15 USCA § 86), which provides that "Any person who believes he would be *damaged* by the registration of a mark" may oppose the same, etc., also should be taken into consideration. (Italics ours.)

The views herein expressed are in entire harmony with and are supported by the later decisions of the Court of Appeals of the District of Columbia which has probably, during the last quarter of a century, decided more trade-mark cases than all the other courts combined, in the same length of time. See Duro Pump & Mfg. Co. v. California Cedar Products Co., 56 App. D. C. 156, 11 F.(2d) 205; Macy & Co. v. Carter & Sons, 56 App. D. C. 249, 12 F.(2d) 190; Haas Bros. Fabrics Corp. v. Bliss, Fabyan & Co., 57 App. D. C. 44, 16 F.(2d) 540; Di Santo v. Guarneri, 57 App. D. C. 89, 17 F.(2d) 677; Blek Co. v. Mishawaka Rubber & Woolen Mfg. Co., 57 App. D. C. 149, 18 F.(2d) 191; Kassman & Kessner v. Rosenberg Bros. Co., 56 App. D. C. 109, 10 F.(2d) 904; Lincoln Motor Co. v. Lincoln Mfg. Co., 58 App. D. C. 191, 26 F.(2d) 563, and In re Defender Mfg. Co., 58 App. D. C. 234, 26 F. (2d) 1012.

We conclude that the use of applicant's trade-mark as proposed would be likely to cause confusion and mistake in the mind of the public and its use would deceive purchasers, because the goods upon which the trade-marks of opposer and applicant are affixed have descriptive properties which are the same. The goods of both parties are used for the same purposes—to make bread and pastries. The use of one may suggest the use of the other. They are sold to and used by the same people, and some of them are sold in the same kind of containers. If no confusion resulted under the circumstances of this case, it would be because the goods were so totally dissimilar as to permit of no confusion. It follows that since there is likely to be confusion, it is by reason of the fact that the respective goods have such qualities in common as would make confusion probable.

The decision of the Commissioner of Patents is reversed.

Reversed.

GARRETT and LENROOT, Associate Judges, concur in the conclusion.