**PROCTOR & GAMBLE CO. v. J. L. PRES-COTT CO.**

Patent Appeal No. 2764.

Court of Customs and Patent Appeals.
May 27, 1931.

Allen & Allen, of Cincinnati, Ohio (Paul Finckel, of Columbus, Ohio, of counsel), for appellant.

Joshua R. H. Potts, of Chicago, Ill. (T. Bertram Humphries, of Philadelphia, Pa., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

From a decision of the Commissioner of Patents, affirming the decision of the Examiner of Interferences, dismissing appellant's notice of opposition, and adjudging that the appellee was entitled to the registration of its trade-mark, the appellant has appealed to this court.

The opposer, appellant, based its opposition upon the use, by it and its predecessors, of its registered trade-mark "Oxydol," since June 10, 1914, as a trade-mark on soap powder.

The applicant, appellee, seeks to register "Oxol," which is used as a trade-mark on a liquid chlorine solution, intended for use as a disinfectant, germicide, deodorant, sterilizer, cleaner, and bleacher.

Opposer's merchandise, "soap powder," is in powdered form and adapted for various cleaning purposes, such as laundry, kitchen, and other household uses. It is put up in rectangular paper boxes, about eight inches high and five inches wide, by two inches thick, and has displayed prominently thereon the word "Oxydol" and the representation of a girl. On opposer's package it is stated: "It is neither a Soap Powder nor a Powdered Soap in the understanding of those terms, but it is a complete detergent that may be used for any purpose for which Soap or Soap Powder is used."

The applicant's mark consists of the word "Oxol" in large letters upon a frame or scroll, together with the representation of a girl holding a cloth. The applicant, on its container, says that there are 999 uses for "Oxol" in every home, and that among such uses are those of bleaching clothes, removing stains, and cleaning household articles (such as bathtubs, sinks, wash-basins, linoleum, drain boards, and so forth), and that it is used as a sterilizer. On the package it is recommended for cutting grease, for whitening clothes, and for deodorizing. "Oxol" is put up in bottles about eight inches high by three inches in diameter.

The record shows that, during the year prior to the date of applicant's filing its application, the opposer spent $600,000 in advertising its product "Oxydol," and that the applicant, the J. L. Prescott Company, was and is a large concern manufacturing a great number of household products; that shortly before it filed its application it decided to extend its line to include the article with which we are herein concerned.

As we see it, the record in this case presents but two questions: First, are the goods of the respective parties of the same descriptive properties? Second, if the goods are of the same descriptive properties, are the marks so similar as to be likely to bring about confusion, under the circumstances shown?

The record shows that the goods are used, in part, for identical purposes. They are both common household articles, sold at low prices and purchased by customers who ordinarily, before purchasing same, would make little, if any, inquiry as to their origin.

We think the goods are of the same class and are of the same descriptive properties.

Applicant in adopting its proposed trade-

mark has chosen one beginning with "Ox" and ending with "ol." The word embodies all of the letters of appellant's trade-mark "Oxydol" except the letters "y" and "d." The sound of the respective words is quite similar.

The goods, being to some extent dissimilar in appearance and use, and the marks not being identical, the Examiner of Interferences and the Commissioner of Patents concluded that there was no likelihood of confusion. In a case of this kind this question, of course, is largely a matter of opinion.

We are of the opinion that there is a strong probability that confusion as to origin of the goods would result to the purchasing public in event both marks were registered, and were used in the manner shown in the record. At least there is some substantial doubt on the question, and, under the familiar rule, such doubt should be resolved against the newcomer, inasmuch as he has a wide field to select from in choosing his trade-mark.

It was admitted in argument before this court that the applicant deliberately selected the mark "Oxol" after considering the legal effect of doing so, in view of the registered trade-mark "Oxydol," and, while applicant does not admit that it selected "Oxol" with the purpose of profiting by the advertisement and good will of the "Oxydol" trade-mark, there is no attempt at explanation as to why the word "Oxol" was adopted, and it seems fair to infer that, owing to the peculiar character of the two arbitrary marks, and in the absence of any explanation whatever, applicant sought to profit by the confusion that would result.

We think this case is controlled by Lever Bros. Co. v. Riodela Chemical Co., 41 F.(2d) 408, 411, 17 C. C. P. A. 1272, in which case the facts were quite similar to those at bar. There the court said:

"So here, why did appellee select the word 'Tex' when there was a multitude of words that were short and easy to remember, bearing no similarity to the word 'Lux,' any one of which might have been adopted by appellee without any probability of causing confusion or mistake in the mind of the public? If its sole purpose in adopting a trademark was to indicate origin of its own goods, we would expect it to select a mark having no similarity to any other used upon similar goods.

"Of course, if confusion or mistake is not likely to result from the use of the two marks, the motive of the later applicant in adopting its mark cannot affect its right to registration; but if, in the adoption and use of the mark, there be a purpose of confusing the mind of the public as to the origin of the goods to which it is applied, we have a right, in determining the question of likelihood of confusion or mistake, to consider the motive in adopting the mark as indicating an opinion, upon the part of one vitally interested, that confusion or mistake would likely result from use of the mark. After all, the determination of the question of likelihood of confusion or mistake in the use of trade-marks must, as a general rule, be a matter of opinion, and not the result of testimony produced as to the existence or absence of such confusion. Therefore the tribunals of the Patent Office, and this court as a reviewing body, may, in cases where one adopts and uses a mark with the motive of confusing the mind of the public, consider that motive as one of the factors in determining the question of whether use of such mark is likely to cause confusion or mistake in the mind of the public."

The decision of the Commissioner of Patents is reversed.

Reversed.

HATFIELD, Associate Judge, concurs in the conclusion.

GARRETT, Associate Judge (specially concurring).

While concurring in the conclusion in this case, I do so simply upon the ground that the goods are of the same descriptive properties, and that the marks bear such a resemblance to each other as that registration is forbidden under a proper construction of the Trade-Mark Registration Act (15 USCA §§ 81–109).

I do not fully understand the statement in the majority opinion that, "in a case of this kind this question [likelihood of confusion], of course, is largely a matter of opinion." Ample authority to establish the proper legal rule by which to test the issue is to be found in decisions of this and other courts. Goodrich Co. v. Hockmeyer, 40 F.(2d) 99, 17 C. C. P. A. 1068; Cheek-Neal Coffee Co. v. Hal Dick Mfg. Co., 40 F.(2d) 106, 17 C. C. P. A. 1103; California Packing Corporation v. Tillman & Bendel, Inc., 40 F.(2d) 108, 17 C. C. P. A. 1048; Sun-Maid Raisin Growers of California v. American Grocer Co., 40 F.(2d) 116, 17 C. C. P. A. 1034, Heekin Co. v. Lawrenceburg Roller Mills Co.,

40 F.(2d) 119, 17 C. C. P. A. 1093; Malone v. Horowitz, 41 F.(2d) 414, 17 C. C. P. A. 1252; Fishbeck Soap Co. v. Kleeno Manufacturing Co., 44 App. D. C. 6, and cases cited in these several decisions.

I find nothing in the record which leads me to feel justified in joining in the inference that "applicant sought to profit by the confusion that would result."

The record discloses that, when appellee-applicant had tentatively decided to adopt "Oxol" for the particular commodity involved, it, as is common in such cases, referred the matter to its attorney for a search in the Trade-Mark Division of the Patent Office to ascertain whether there were any registered marks with which that mark might conflict. In the course of this search the attorney came upon appellant-opposer's mark "Oxydol," and another mark of another party—"Oxo." The attorney seems to have advised that "Oxo" might conflict and appellee proceeded to acquire that mark by purchase from its owner. The attorney advised that, in his opinion, there would be no conflict with "Oxydol" which would prevent appellee's registration of "Oxol."

As the Registration Law was then being construed, such advice was not surprising, and I am unwilling to read into this transaction any sinister purpose on the part of appellee. That counsel and appellee had grounds for believing that no legal conflict existed is certainly strongly evidenced by the fact that both tribunals of the Patent Office concurred in granting the registration which we are now denying under what we conceive to be the proper construction of the statute.

It is thought that, if we adopt a policy of determining cases largely as a "matter of opinion," rather than by fixed legal rule, attorneys will find it extremely difficult to advise clients in the future. Individual's opinions may vary or change as they have in the past.

In a specially concurring opinion in Lever Bros. Co. v. Riodela Chemical Co., 41 F. (2d) 408, 17 C. C. P. A. 1272—the only case cited by the majority in their decision in the instant case—I endeavored to point out what seems to me to be the legal unsoundness, in construing the registration statute, of reasoning from effect to cause, by inferring a motive on the part of an applicant and then permitting that inferred motive to constitute a factor in determining the only question with which the court is concerned—confusion or likelihood of confusion. Whatever value that reasoning may have in an unfair trade case,

it has little or none in a registration proceeding.

In so far as I can determine from the record, the trade practices of appellee are quite as ethical as are those of appellant, and I see no occasion for reflecting upon either.