22 C. C. P. A. (Patents)

PROCTOR & GAMBLE CO. v. J. L. PRESCOTT CO.

Patent Appeal No. 3462.

Court of Customs and Patent Appeals.
April 29, 1935.

Rehearing Denied June 3, 1935.

LENROOT, Associate Judge, dissenting.

Allen & Allen, of Cincinnati, Ohio (Drury W. Cooper, of New York City, and Walter M. Shohl, Marston Allen, and E. S. Allen, all of Cincinnati, Ohio, of counsel), for appellant.

Joshua R. H. Potts, of Philadelphia, Pa. (Basel H. Brune, of Philadelphia, Pa., and Eugene Vincent Clarke, of Chicago, Ill., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an appeal from the decision of the Commissioner of Patents, affirming a decision of the Examiner of Trade-Mark Interferences, sustaining the petition of appellee for the cancellation of appellant's trade-mark "Chipso," both tribunals holding that said mark was confusingly similar to the registered trade-mark of appellee "CHASE-O," said marks being applied to goods of the same descriptive properties.

Appellant's mark "Chipso," printed at an oblique angle, was registered on April 12, 1921, upon an application filed October 22, 1920, under the Trade-Mark Act of February 20, 1905 (see 15 USCA § 81 et seq.). The application stated that the mark was used for soap chips. Appellee's mark "CHASE-O," printed at an oblique angle in a rectangle, was registered December 9, 1913, under said Trade-Mark Act of February 20, 1905.

It is conceded by appellant that through mesne assignments appellee is the owner of the mark "CHASE-O," and that the appellee's use and registration of the mark was prior to any use of the mark "Chipso" by the appellant.

Appellant's mark "Chipso" was registered for use for "soap chips," while appellee's mark "CHASE-O," according to the application, was "for a detergent preparation in crystal form for washing, cleansing, and the harmless bleaching of clothes." The goods of both parties are used for the washing of clothes, and unquestionably the goods are of the same descriptive properties.

Section 13 of the Trade-Mark Act of February 20, 1905 (15 USCA § 93), under the provisions of which application to cancel appellant's registration was made, reads as follows: "Sec. 13. Whenever any person shall deem himself injured by the registration of a trade-mark in the Patent Office *he may at any time* apply to the Commissioner of Patents to cancel the registration thereof. The commissioner shall refer such application to the examiner in charge of interferences, who is empowered to hear and determine this question and who shall give notice thereof to the registrant. If it appear after a hearing before the examiner that the registrant *was not entitled to the use of the mark at the date of his application for registration thereof,* or that the mark is not used by the registrant, or has been abandoned, and the examiner shall so decide, *the commissioner shall cancel the registration.* Appeal may be taken to the commissioner in person from the decision

of examiner of interferences." (Italics ours.)"

The only issues before us are whether the marks of the respective parties were confusingly similar at the time appellant's application for certificate of registration was filed, and whether appellee is, by its conduct, precluded from raising the question of appellant's right to use the mark at the time of application for registration. Both tribunals of the Patent Office held that the marks were confusingly similar and that appellee was not estopped from raising the issue.

Both sides took voluminous testimony. Appellee's testimony tends to establish that confusion actually existed between the two marks from 1924 or 1925 to the time that the testimony was taken in 1932. It is appellant's contention that there was no likelihood of confusion between the two marks at the time of appellant's registration of its mark in 1921, and that appellee is estopped by its own acts from claiming that there was confusing similarity between the two marks at the time of the registration of appellant's mark.

It appears from the testimony that at the time of the registration of appellant's mark it had no actual knowledge of any product being sold under the trade-mark "CHASE-O." (Appellant had caused an examination of registered marks to be made.) It further appears from the testimony that the use of appellant's mark on soap chips began in, and has continued since, 1920.

The first use of said mark by appellant was in Michigan. The colors of the front panel of the carton bearing the mark were, and have since continued to be, blue and orange—a broad orange bar extended in a diagonal direction from about the center of the left side of the panel, as it presents itself to the eye, to the upper right-hand corner of the panel. In this orange bar the mark "Chipso" in blue letters is placed, the mark extending through said diagonal. The balance of the panel is blue, with certain descriptive words thereon which are not material here. Appellee contends that the first diagonal bar employed by appellant was yellow in color, and that in 1929 it changed the color on its granule cartons to orange. With respect to this contention of appellee, while there seems to be a slight difference in the shades of orange in appellant's diagonal bars, there is no greater difference than in the shades of orange in appellee's car-

tons, and we do not deem such differences in shades material here.

It further appears that appellant's product "Chipso" entered into the Philadelphia-Baltimore territory in a small way in 1920, but in 1923 its sales in such territory amounted to over 60,000 cases of large-size "Chipso" packages, containing 36 packages to a case, and over 75,000 cases of small-size "Chipso" packages containing 100 packages to a case. From 1920 to 1924, inclusive, appellant expended $1,562,043.22 in general advertising of its product "Chipso."

It appears from the record that the trade-mark "CHASE-O" originated in 1912 in Philadelphia. It was then applied to a product consisting of about 75 per centum soda ash and about 25 per centum bisodium, with sufficient blue to color it and to blue the water when the directions on the carton were followed. This product was manufactured by the Chase-O Manufacturing Company of Philadelphia. The packages retailed for 5 cents each. The front panel of the carton had a white background, with a blue diagonal bar extending from the lower left-hand corner to the upper right-hand corner of the panel. In this blue bar was placed the mark "CHASE-O," extending practically the entire length of the bar. Upon the white background there was printed certain descriptive matter not material here. It was this character of carton and product above described which was upon the market at the time of the registration of appellant's mark.

In March, 1924, appellee acquired said trade-mark and the business and good will in connection therewith from the A-1 Manufacturing Company, which latter company had acquired it from the Chase-O Manufacturing Company in 1918. In the fall of 1924 appellee placed upon the market a package of "CHASE-O" to retail for 10 cents. In this carton the color plan of the 5-cent package was not followed. Instead of the body of the front panel being white, as in the 5-cent package, it was made orange—the same color, substantially, as the broad diagonal bar of appellant's "Chipso" carton. The diagonal bar of blue, with the mark "CHASE-O" in white, remained substantially the same as on the 5-cent carton, but the angle of said bar across the panel was more obtuse than in the 5-cent package. The change in color from white to orange made appellee's 10-cent package much more similar in general appearance to appellant's "Chipso" packages than was appellee's 5-

cent package with the white background. Appellee continued to market the 5-cent package with its white background, as well as its new 10-cent package.

Early in 1924 appellee also changed the formula of its "CHASE-O" product, adding 15 per centum of soap and reducing the percentages of other constituents accordingly. The result of this change in formula was that the goods of appellee to which the mark "CHASE-O" was applied were more similar in character to appellant's product "Chipso" than they were at the time of the registration of appellant's mark.

Appellee's goods were marketed largely in the Philadelphia and Baltimore territory. It appears from the testimony that the sales of the product "CHASE-O" marketed by the Chase-O Manufacturing Company amounted to about $97,500 from the years 1913 to 1917, inclusive, and that during the years 1918 to 1931, inclusive, the sales by appellee and its predecessor, A-1 Manufacturing Company, of the product bearing the mark "CHASE-O" were as follows:

1918, $ 5,456.00.
1919, $47,009.04.
1920, $64,962.96.
1921, $89,740.20.
1922, $105,194.60.
1923, $100,632.75.
1924, $107,778.00.
1925, $114,919.68.
1926, $89,038.66.
1927, $73,283.66.
1928, $68,832.58.
1929, $39,915.67.
1930, $26,463.75.
1931, $16,487.98.

It is the contention of appellee that the sales of appellee's product "CHASE-O" rapidly declined from 1925 to 1931, due, it claims, to the confusion existing between its mark "CHASE-O" and appellant's mark "Chipso."

A great deal of testimony is contained in the record upon the subject of confusion, and we think it is fairly established that confusion to a certain extent did exist in the minds of purchasers between appellee's 10-cent package of "CHASE-O" and appellant's smaller package of "Chipso." However, there is no definite evidence of actual confusion existing prior to appellee's adoption of its 10-cent package, the front panel of which, as hereinbefore stated, much more nearly resembled appellant's front panel of its packages of "Chipso" than did appellee's 5-cent package of "CHASE-O." We do not think that actual confusion is established between appellee's 5-cent package of "CHASE-O" and appellant's packages of "Chipso."

We find no evidence in the record of the advertising expenditures of appellee with respect to its "CHASE-O" product, and to what extent its falling off of sales may have been due to confusion between the packages of the respective parties or between the trade-marks here involved, or to what extent such falling off may have been due to lessened advertising or other causes, we are unable to determine.

We do not deem it necessary to set out or to comment further upon the very voluminous testimony with respect to confusion between the respective marks of the parties.

Concerning the evidence of both parties regarding actual confusion with respect to the marks of the parties hereto, the Examiner of Trade-Mark Interferences said: "The testimony of both parties that has been properly presented which is directed to the question of confusion or lack of confusion between the marks here involved has been carefully considered. Testimony of this character as a rule, if not wholly biased, is inclined to be favorable to the side presenting it and, generally speaking, is found to be of little, if any, help in the determination of the question of confusing resemblances between marks, which, after all, is largely a matter of opinion of the tribunal whose duty it is to pass upon this question."

Such testimony, however, in this kind of case, is admissible and may have a bearing upon the likelihood of confusion between the two marks at the time of registration.

The Patent Office tribunals held, and properly so, that mere delay or laches was not a well-founded defense on the part of appellant in this action, and among the cited authorities supporting this view is Cluett, Peabody & Co., Inc., v. Samuel Hartogensis, 41 F.(2d) 94, 17 C. C. P. A. (Patents) 1166. Appellant concedes in this court that "mere laches" is not a good defense, but it argues that the conduct of appellee hereinbefore referred to is a matter for our consideration. It argues that appellee's delay, coupled with the affirmative acts of appellee in simulating appellant's packages both in appearance and size, and appellee's change of formula, and not the

use of the mark of appellant, has brought about such confusion as is shown; that the acts which brought about such confusion were intentionally performed with a view of profiting thereby; and that by reason of such wrongdoing, appellee is estopped from obtaining the relief it seeks. Equity cases involving the doctrine of unclean hands are cited and discussed by appellant in connection with this phase of the case.

 It is our view that the trade-mark "Chipso," as registered, so nearly resembled the previously registered and previously used "CHASE-O" mark that there was likelihood of causing confusion and mistake in the mind of the public, and that because of this fact, the appellant was not entitled to the use of the mark at the time of its application for registration thereof, and the same should not have been registered. While the testimony of actual confusion in the use of the marks when applied to packages in the manner shown by the testimony may be some indication that the marks were confusingly similar at the time of registration, it is obvious that it is not always easy to determine to what extent such confusion is due in whole or in part to the similarity of the marks or to other considerations. No actual confusion need be proven. Patton Paint Co. v. Orr's Zinc White, Ltd., 48 App. D. C. 221; California Packing Corp. v. Tillman & Bendel, Inc., 40 F.(2d) 108, 17 C. C. P. A. (Patents) 1048, 1058; Sun-Maid Raisin Growers of California v. American Grocer Co., 40 F.(2d) 116, 17 C. C. P. A. (Patents) 1034, 1036; Apex Electrical Mfg. Co. v. Landers, Frary & Clark, 41 F.(2d) 99, 17 C. C. P. A. (Patents) 1184, 1187.

We agree with the decisions of the tribunals below that the marks at the time of registration so nearly resembled each other that likelihood of confusion would result. It is impossible to escape this conclusion, and while appellant has asserted that there was no confusing similarity between the marks at the time of registration, that phase of the case has not been pressed with much vigor, and certainly not convincingly, in this court. Appellant has relied chiefly upon its estoppel defenses.

Both marks have the same number of letters. The first two letters are the same and sound alike. The marks have the same terminal letter "o." The end of the word "CHASE-O" and that of the word "Chipso" have the same sound. There is much similarity in the general appearance and sound of the two words. While the registrations show some differences in the angle at which the marks are placed, both of them show that they are placed at an angle leaning to the right.

We have held the following marks to be confusingly similar: [1] "Epco" and "Esso"; [2] "Calcyanide" and "Calcium Cyanide"; [3] "Molo" and "Poro"; [4] "Hexol" and "Hexcide"; [5] "Tex" and "Lux"; [6] "Zip-On" and "Zipper"; [7] "Peroxogen" and "Dioxogen"; [8] "Air-O" and "Arrow"; [9] "Oxol" and "Oxydol"; [10] "Solvit-All" and "Solvite"; [11] "Zeno" and "Zanol"; [12] "Ammo-Phos-Ko" and "Nitrophoska"; [13] "Novite" and "Oakite"; and [14] "Z.B.T." and "T.Z.L.B."

As to whether the doctrine of unclean hands, arising from conduct happening subsequent to the registration of the newcomer's mark, in view of the particular provisions of the statute above quoted, may con-

[1] Standard Oil Co. (New Jersey) v. Clarence W. Epley, 40 F.(2d) 997, 17 C. C. P. A. (Patents) 1224.

[2] California Cyanide Co. v. American Cyanamid Co., 40 F.(2d) 1003, 17 C. C. P. A. (Patents) 1198.

[3] Malone v. Horowitz, 41 F.(2d) 414, 17 C. C. P. A. (Patents) 1252.

[4] MacEachen v. Tar Products Corp., 41 F.(2d) 295, 17 C. C. P. A. (Patents) 1264.

[5] Lever Brothers Co. v. Riodela Chemical Co., 41 F.(2d) 408, 17 C. C. P. A. (Patents) 1272.

[6] B. F. Goodrich Co. v. Hockmeyer et al., 40 F.(2d) 99, 17 C. C. P. A. (Patents) 1068.

[7] Bookman v. Oakland Chemical Co., 40 F.(2d) 1006, 17 C. C. P. A. (Patents) 1213.

[8] Cluett, Peabody & Co., Inc., v. Denver M. Wright, 46 F.(2d) 711, 18 C. C. P. A. (Patents) 937.

[9] Procter & Gamble Co. v. J. L. Prescott Co., 49 F.(2d) 959, 18 C. C. P. A. (Patents) 1433.

[10] Langfield v. Solvit-All Corp., 49 F.(2d) 480, 18 C. C. P. A. (Patents) 1313.

[11] American Products Co. v. F. A. Leonard, 53 F.(2d) 894, 19 C. C. P. A. (Patents) 742.

[12] American Cyanamid Co. v. Synthetic Nitrogen Products Corp., 58 F.(2d) 834, 19 C. C. P. A. (Patents) 1235.

[13] Buckeye Soda Co. v. Oakite Products, Inc., 56 F.(2d) 462, 19 C. C. P. A. (Patents) 1034.

[14] Crystal Corp. v. Manhattan Chemical Mfg. Co., 75 F.(2d) 506, 22 C. C. P. A. (Patents) ——.

stitute a defense in a Patent Office cancellation proceeding, we find it unnecessary to decide. We think it proper to say, however, that no authority has been cited and none has been found which holds that such a defense under such circumstances is well founded. It is our view that if such a defense could be properly interposed "the charge was not established by the evidence." The last-quoted language was used by the Court of Appeals of the District of Columbia in Krank v. Philippe, 295 F. 1001, 54 App. D. C. 180, an appeal involving a Patent Office cancellation proceeding.

Aside from the fact that when appellee enlarged the size of its package, its mark was placed in more of a horizontal position than that shown in the registration and more in the same position as that occupied by appellant's mark, we find nothing complained of that relates to the use of the mark itself. It is true that appellee changed the color of a portion of its package from white to orange. This portion of appellant's mark on appellant's package is blue. Appellee did somewhat change its formula and changed the size of its package from a 5-cent to a 10-cent package, but even then its package was little more than one-fourth as large as appellant's package. As far as concerns us in this particular case, appellee had the right to make the said change in its formula and adopt the color and the package which it did, since it was the owner of the mark. Being the owner of the mark, it had a right to rely upon the mark and its name upon the package to distinguish its goods from the goods of others. A. G. Morse Co. v. Lowney Co. (D. C.) 256 F. 935, 9 T. M. Rep. 341; Thum Co. v. Dickinson et al., 7 T. M. Rep. 496, reversed on other grounds, O. & W. Thum Co. v. Dickinson (C. C. A.) 245 F. 609; Oliver Chilled Plow Works v. Wm. J. Oliver Mfg. Co., 40 App. D. C. 125.

The question of simulating the size and color of packages is a subject-matter which belongs to the domain of unfair competition, and we are not concerned with it here. Oliver Chilled Plow Works v. Wm. J. Oliver Mfg. Co., supra; Scot Tissue Co. v. Interlake Tissue Mills Co., Ltd., 151 M. D. 145, 16 T. M. Rep. 200.

Appellant argues that the record fails to show any proof of confusion or damage at or near the time of registration. The mere fact that the record does not show confusion makes no difference if the marks, at the time of registration, so nearly resembled each other as to make confusion likely, and the injury contemplated by the section of the statute under consideration is sufficiently established when mere likelihood of confusion is shown. Patton Paint Co. v. Orr's Zinc White, Ltd., supra.

Appellant in this court has stressed with great persistence the hardships resulting from the ruling of the Patent Office tribunals. Any resulting hardships, of course, are regrettable; but such a situation, when brought about in the manner shown here, affords no justification for this court to hold that the two trade-marks at the time of registration did not so closely resemble each other as to make confusion likely. The trade-mark decisions of this court, involving this question, are, we think, characterized by great uniformity, not only in denying registration where confusion was likely, but doing so if the question were doubtful. To now hold, as we would be required to hold if the decision of the commissioner was reversed, that the two marks were not confusingly similar at the time of registration would, in our judgment, result in far more regrettable consequences than flow from our affirmance of the commissioner's decision.

Appellant states that the Patent Office has "seen fit to order cancellation of the mark 'Chipso,' thus striking to the ground a trade property of inestimable value * * *." The registrability of the mark—the right of appellant to assert exclusive ownership thereto which registration implies—and not merely the right to use the mark, was the question before the Patent Office tribunals and is the question here.

This Patent Office cancellation proceeding is governed by the terms of the statute, and its terms are not indefinite. It is intended to afford a means of canceling certain registrations, among them registrations which should not have been allowed. Registration is based upon the right of the registrant to the exclusive use of the mark sought to be registered. Equity frequently permits more than one person to use the same mark, since the conduct of the parties may affect the exclusive right to use. We have frequently pointed out this difference between our jurisdiction and that of the court of equity. California Packing Corp. v. Tillman & Bendel, supra; B. F. Goodrich Co. v. Hockmeyer, 40 F.(2d) 99, 17 C. C. P. A. (Patents) 1068; Van Camp Sea Food Co. v. A. B. Stewart Organizations, 50 F.(2d) 976, 18 C. C. P. A. (Patents) 1415.

Since we conclude that appellant "was not entitled to the use of the mark," "Chipso," within the meaning of the statute involved, at the time of the filing of the application for registration, and that appellee is not estopped from raising the question, we find no error in the decision of the commissioner, and the same is affirmed.

Affirmed.

GARRETT, Associate Judge, concurs in the conclusion.

LENROOT, Associate Judge, dissents.